**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO.: 7:20-CV-00052 |
| versus | § | |
| | § | |
| | § | |
| $210,100.00 IN U.S. CURRENCY, | § | |
| Defendant | § | |

**PETITIONER'S CLAIM FOR INTEREST IN DEFENDANT CASH**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, attorney Ismael Rivera, on behalf of Petitioner Claimant, Jose Luis Garcia, and files Petitioner's Claim for Interest on Defendant Cash, in the amount of $210,100.00 in U.S. Currency and $48,735.00 in U.S. Currency, and asks this Honorable Court to grant Petitioner's Claim and return Defendant Cash to Petitioner. Petitioner asserts his interest in Defendant Cash, as the Petitioner earned the cash from the sale of real estate and from his cattle, construction, and restaurant business. In support of Petitioner's Claim, Petitioner asserts the following:

          **I.**       **4th Amendment Violation**

On August 30, 2019, federal agents entered Petitioner's home at 39 Alegria Circle Rio Grande City, Texas 78582 without a warrant. Contrary to Plaintiff's assertion that federal agents executed a search warrant, no warrant was provided at the time federal agents stormed Petitioner's home. Petitioner requested a copy of the warrant and no warrant was provided. Petitioner was informed that a warrant would be provided via mail. Petitioner never received a copy of the warrant in person or by mail. As of the date of this Claim, Petitioner has not been provided a copy of any warrant that allowed federal agents into his home on the date of August 30, 2019.

Entry into Petitioner's home without providing a warrant is in violation of the Fourth Amendment to the United States Constitution. Petitioner, Jose Luis Garcia was not provided with a warrant prior to or after entry into his home, and therefore, is unaware of the alleged probable cause that prompted federal agents to enter his home. (*See* 4ᵗʰ Amendment to U.S. Constitution, where it states that only with a showing of probable cause, supported by oath or affirmation, can a warrant be issued). Petitioner has not been afforded an opportunity to inspect the alleged warrant and has not been afforded an opportunity to object to any alleged probable cause giving rise to the alleged warrant.

Additionally, a search conducted by a government entity without a warrant is presumptively invalid, unless it falls within a specifically carved-out exception. Katz v. United States, 389 U.S. 347 (1967). In this case, not only was a warrant not produced at the time of entry, but entry by federal agents into Petitioner's home is not protected by any of the exceptions to the warrant requirement. The outlined exceptions allowing warrantless searches are search incident to a lawful arrest, plain view exception, consent, stop and frisk, automobile exception, and exigent circumstances such as agents being in hot pursuit. None of the exceptions outlined exist in this case, and as such, any evidence obtained, including Defendant Cash, cannot be seized.

Moreover, the exclusionary rule applies in this instance because evidence gained from an unreasonable search or seizure in violation of the fourth Amendment and fourteenth amendment is invalid. Mapp v. Ohio, 367 U.S. 643 (1961). It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Id. at 370. In this case, Petitioner's Claim asserts that federal agents entered his home without a warrant and thus violated his fourth amendment right against an unreasonable search and seizure. As a result of the warrantless search, the exclusionary rule should be applied and Defendant Cash should be

2

excluded from seizure and returned to Petitioner as it is consistent with the holding in <u>Mapp v.</u> <u>Ohio</u>, as well as the fourteenth amendment's due process clause.  <u>Id</u>. at 372.

While Petitioner asserts a fourth amendment violation resulting from an unreasonable search and seizure, Petitioner, in the event this Honorable Court finds that no violation of the fourth amendment occurred, in the alternative also makes a claim contesting the Government's allegation that Defendant Cash is subject to forfeiture under 21 U.S.C. §881(a)(6).

## II.      Petitioner's Interest in Defendant Cash

While Petitioner Jose Luis Garcia, contends that the seizure of Defendant Cash was in violation of the fourth amendment's guarantee against unreasonable search and seizure, Petitioner Jose Luis Garcia, asserts an interest in Defendant Cash.  The interest asserted is in Defendant Cash for $210,000.00 in U.S. Currency and $48,735.00 in U.S. Currency. Petitioner first asserted an interest in Defendant Cash when, through counsel, Petitioner filed a claim and petition for remission/mitigation through the Department of Justice (DOJ) website on or about November 26, 2019.

In his online claim and petition, as he does through this answer and verified claim, Petitioner contends that he was a bona fide purchaser and seller of real property located in Tamaulipas, Mexico. The $210,100.00 that is now Defendant Cash, was derived from the sale of said property.

The property is located at Vaso de la Presa Marte R. Gomez, Municipio de Camargo, Tamaulipas, Mexico and ranges from 188 to 244 acres, depending on the level of Lake Comales, which borders the property. In very dry seasons, the property can go up to 244 acres because the lake recedes. Petitioner purchased the property on or about 2010 for about $70,000. Late in 2017, a buyer had an interest in the property, and he agreed to buy it for $250,000. The individual who

purchased the property was Carmelo Cervantes Saenz. An initial down payment of $50,000 was given to secure the sale. Three subsequent $50,000 payments and two $25,000 payments were made to complete the sale. The last payment was made on or about July 2019. All payments were done in cash. Check payments were offered, but Petitioner refused to accept checks after his bank informed him that they would not accept Mexican checks in the amount of $50,000 and $25,000.

The property in Mexico was purchased with the intention of using it to graze cattle. However, the terrain and lack of rain prevented Petitioner from using the land for its intended purpose. In the long run, the cost of grazing cattle in Mexico was not going to be as financially fruitful as Petitioner initially envisioned.

Moreover, Petitioner asserts his interest in Defendant Cash in the amount of $48,735.00. Petitioner first asserted his interest in Defendant Cash in the amount of $48,735.00 when he filed a claim and petition for remission/mitigation through the Department of Justice (DOJ) website on or about November 26, 2019.

Petitioner argues that he has a valid, good faith, and legally recognizable interest in the property. Petitioner argues that the seizure of Defendant Cash, in the amount of $48,735.00, was part of his savings from Diesel Construction. Part of Petitioner's construction business practice was to have cash on hand because of the nature of the construction business. Sometimes sub-contractors will not accept checks and expect to be paid in cash. Other times, certain jobs require that plumbers or electricians work on the weekends and they do not want to be paid in checks or a bank transfer because it was a weekend job.

Petitioner argues that the seizure of the property is harmful to the growth and progress of his construction business. Petitioner's ability to earn a steady income, especially since he had to close his restaurant because of the COVID-19 pandemic, places his family and business in a

4

difficult financial situation. Petitioner argues that forfeiture of Defendant Cash would penalize him and his family and cause long term damage to his reputation and business, because of speculation that he is involved in narcotics. Petitioner argues that forfeiture as a result of speculation undermines the judicial process.

### III.    Objection to Basis for Forfeiture

Petitioner objects to the legal basis upon which the forfeiture of Defendant Cash is being sought. Petitioner argues that 21 U.S.C. § 881(a)(6) states that:

> *All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds **traceable to such an exchange**, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.*

Petitioner argues that Defendant Cash is not subject to forfeiture because the information contained in the "Factual Basis" section of the Complaint for Forfeiture in Rem is based on speculation. The information contained in the verified statement by Special Agent Christopher Donahue is based on the belief that Defendant Cash was furnished or intended to be furnished in exchange for a controlled substance, yet no tangible proof was provided that Defendant Cash was derived from an illegal enterprise and no nexus was provided to substantiate the claim that Defendant Cash can be traced to a violation of the Controlled Substance Act. Additionally, no evidence such as known "associates", photos, video, eyewitnesses and no proof that Petitioner has ever been in possession of a controlled substance has been presented or mentioned to even suggest he is involved in narcotics.

Additionally, Petitioner asserts the innocent owner provision of 18 U.S.C. § 983(d) as he was a "bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value)" relating to the sale of the property in Mexico. (*See* 18 U.S.C. § 983(d)(3)(A)(i)).

In support of Petitioner's contention that the assertions raised within the Complaint for Forfeiture in Rem, Petitioner points out and counters the main factors used by Special Agent Christopher Donahue to advance his belief that Defendant Cash was derived from a drug related enterprise.

## IV.    Objection to "Factual Basis" Statement as Speculation

Plaintiff, United States of America (hereinafter "Plaintiff"), advances Special Agent Christopher Donahue's verified statement, as the basis for which to assert the complaint that Defendant Cash is subject to forfeiture under 21 U.S.C. §881(a)(6). Petitioner contends that Special Agent Donahue's verified statement relies on seven observations made during the warrantless search. Petitioner argues that the seven observations used to conclude that Defendant Cash was subject to forfeiture under 21 U.S.C. §881(a)(6) are based on speculation and wrongfully accuse Petitioner of wrongdoing.   Petitioner objects to the seven observations and argues the following:

### 1.    Currency

In his verified statement, Special Agent Donahue claims that Petitioner, Mr. Garcia, admitted to having a large amount of currency in the backyard safe. (*See* Page 2, Paragraph 8). Petitioner objects to that statement as untrue. Petitioner contends that he never admitted to having money in his home. Petitioner argues that he was more focused on asking for a copy of the warrant that ultimately granted federal agents access to the home where Petitioner and his pregnant partner lived.

Moreover, Petitioner argues that making an admission to having large amounts of money, while requesting a warrant, would undermine his request for the warrant because he would then be volunteering information and such an act could be construed as consent to the search.  Petitioner

did not consent to the search of his home. Petitioner argues that he was told the warrant was because they were looking for drugs, but no warrant was provided, and no drugs or traces of drugs were found in the home.

## 2.    Written Message

While searching the home and vehicles in the home, it is alleged that a written message was found inside Petitioner's truck. (*See* Page 3, Paragraph 8). According to the statement, the alleged written message warned about reprisals from the Cartel Del Golfo (hereinafter "CDG"). The alleged written message is being used to advance the argument that Petitioner is a drug trafficker or has ties to the CDG, yet no written message has been provided to substantiate the claim that such a message exists. Additionally, no specific details about the type of reprisals mentioned in the message were provided in the verified statement. Also, no details were provided as to whether or not Petitioner wrote the message, if the message was directed at Petitioner, or who may have written the message. If an allegation of impropriety is asserted, Petitioner argues that the existence of a written message that references a known cartel group would be highly relevant in making a link to Petitioner and a known drug cartel.

However, Petitioner argues that the alleged written message is non-existent and that if the alleged message does exist, that the message be provided to Petitioner's counsel and this Honorable Court for verification and inspection.

## 3.    Money Counter

It is speculated by Special Agent Donahue that Petitioner is a drug trafficker because a money counter was found in his home. (*See* Page 3, Paragraph 9). Concluding that a person who owns a money counter is involved in narcotics is a giant leap. Accountants, privately owned pawn shops, and other business owners use money counters. To suggest that accountants and business

owners who own money counter are involved in drug trafficking would be speculation, as is the case here.  In this case, Petitioner asserts that he owns a couple of money counters. Petitioner has a money counter that he uses at his restaurant and uses it to count the cash proceeds derived from the sale of cattle.  In addition to owning a restaurant, which had to be shut down because of the recent COVID-19 Pandemic, Petitioner also owns Diesel Construction, and buys and sells cattle. Petitioner argues that Special Agent Donahue overlooks the fact that Petitioner is a business owner. Petitioner argues that he is not a drug trafficker simply because he owns a money counter and to suggest that he is involved in narcotics or that Defendant Cash was derived from such alleged involvement is speculation.

### 4.     Digital Radio

It is further speculated that Petitioner is involved in narcotics and that Defendant Cash was derived from such alleged activities because Petitioner owns a digital radio.  (*See* Page 3, Paragraph 9).  Special Agent Donahue suggests that because drug traffickers use portable radios near border areas where cell phones don't work, that Petitioner is involved in narcotics because he owns a digital radio.

It is important to point out that Petitioner buys and sells cattle and that his father owns a ranch totaling over 1000 acres in Starr County. Petitioner's father has owned the ranch for over 30 years.  Petitioner argues that it is common for ranchers and cattle owners to own and use radios because cell phones do not work while they are looking for cattle in the brush.  Ranchers, just as those involved in illegal activities, own and use radios for the same reason, but that link is not a strong enough reason to suggest that ranchers, such as Petitioner, are involved in illegal activities just because they use digital radios.

### 5.        Alleged Associates

It is asserted in the verified statement, that Petitioner has "associates" in the drug trafficking enterprise and that together they use the digital radios.  Special Agent Donahue mentions that Petitioner is part of a drug trafficking investigation. Whether or not Petitioner is part of a drug trafficking investigation is beyond the control of Petitioner.  Petitioner, however, objects to the notion that he has "associates" and that he uses his radio with alleged "associates" that have not been named, or their statements provided, or brought before the court to verify the allegation made in the verified statement.  Petitioner contends that the suggestion that he has "associates" is speculation and wrongfully accuses Petitioner of wrongdoing.  If Petitioner does have "associates" as it is being suggested, Petitioner respectfully requests the names of these alleged "associates" and credible evidence that links Petitioner to the alleged "associates."

### 6.        Signal Jammer

During the search of Petitioner's home, a radio frequency signal jammer was located. It is alleged that Petitioner and his "associates" were utilizing radio signal jammers to prevent surveillance pictures taken of them participating in illegal activity from being relayed to agents. (*See* Page 4, Paragraph 10).  Again, Petitioner argues that no "associates" exist and that no proof, other than speculation is being presented. Petitioner also argues that if law enforcement was conducting surveillance on Petitioner, that more proof of an alleged involvement would exist. Instead, the attempt at establishing a nexus between Petitioner and narcotics is being built upon speculation and on items located throughout the home.

In this factor, a signal jammer is advanced as a sign of Petitioner's alleged involvement in narcotics.  However, no real analysis of the signal jammer is provided, such as the quality of the signal jammer, the range of the signal jammer or dates in which the alleged jamming occurred.

Signal jammers vary greatly in their capabilities depending on the make and model.  However, no concrete details are provided to support the contention that the signal jammer found at Petitioner's home was capable of jamming law enforcement's signals.  The quality of the jammer is important because a basic jammer will typically only block one of the cell phone's two frequencies.  (*See* perfectjammer.com).  More advanced jammers can block more than one frequency and make it more difficult for information to be transmitted between cameras or cell phones, which is supported by Special Agent Donahue's explanation of how signal jammers work.

However, it is important to know whether or not the signal jammer located at Petitioner's home is capable of doing what Special Agent Donahue described.  Another piece of relevant information that was left out is whether or not the range capabilities of the jammer actually jammed or impeded the alleged investigation during the alleged wrongdoing. Signal jammers can have a range of 10 meters up to 2000 meters; so, it is important to know how far the cameras were from the alleged illegal activities and whether the jammer found in Petitioner's home could actually interrupt the frequency used by law enforcement.

While the specialized details of how jammers work and the capabilities of law enforcement cameras is beyond the scope of this Claim, Petitioner still argues that no real analysis was provided as to the signal jammer and whether or not it is capable of doing what is alleged it can do.

Petitioner further contends that he acknowledged use of the jammer at movie theaters and further acknowledges use of the jammer in his restaurant to prevent workers from using their cell phones while on the job, as well as on construction sites during the weekend to ensure the work was being performed by the construction crew. Complaints from customers as to poor cell phone coverage inside the restaurant forced Petitioner to stop using the jammer at the restaurant. Once again, Petitioner argues that the mere presence of a signal jammer is not a reason to suggest that

10

Petitioner is involved in narcotics or that Defendant Cash was derived from narcotics.  Rather Petitioner's use of the signal jammer was more trivial and for quality control at his restaurant and at construction sites than for impeding surveillance on alleged criminal behavior.

### 7.    Real Property

A last assertion used to advance the suspicion that Defendant Cash was furnished or intended to be furnished in exchange for a controlled substance is that Petitioner could not produce documentation or verification of the sale of land in Mexico, at the time his home was being raided by federal agents. (*See* Page 4, Paragraph 11).  However, Petitioner later filed a claim and petition for remission/mitigation through the Department of Justice (DOJ) website on or about November 26, 2019, and in those submissions, Petitioner provided information regarding the sale of the land in Mexico.

As previously stated, Petitioner purchased the land in Tamaulipas, Mexico on or about 2010. The property is located at Vaso de la Presa Marte R. Gomez, Municipio de Camargo, Tamaulipas, Mexico. The individual who purchased the property was Carmelo Cervantes Saenz, an individual that Petitioner never met or . To suggest Petitioner's proceeds are not as he claims just because he could not recall certain information at the time his home is being raided without a warrant, is highly prejudicial and unjust.  The circumstances surrounding Petitioner at the time he is being asked questions about the property should not be overlooked, especially when Petitioner was asking for a copy of the warrant.

Moreover, as an alternative, it is mentioned that Petitioner stated he "believed" the unknown Mexican buyer likely used narcotics proceeds to make the purchase.  A belief is not concrete or fact and it is not evidence, rather it is speculation, just as the entire basis of the allegation that Defendant Cash was derived from the sale of narcotics.

11

It is further argued that Defendant Cash is subject to forfeiture under 21 U.S.C. §881(a)(6) as property traceable to proceeds of drug trafficking. However, 21 U.S.C. §881(a)(6) Subsec.(a)(6). Pub. L 106-185 §2(c)(2) states that:

> *except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner"*

Consistent with Subsec.(a)(6), Petitioner is protected as an innocent owner. To suggest that just because Petitioner "believed" the buyer was involved in narcotics is insufficient to establish that Petitioner knew and more so, that the proceeds gained should now be subject to property traceable to proceeds of drug trafficking. The innocent owner defense is based on actual knowledge, not constructive knowledge, that existed at the time of the transfer and not at the time of the illegal activity. <u>United States v. 6640 SW 48th St</u>., 41 F.3d 1448, 1452 (11th Cir.1995). In this case, Petitioner has no actual knowledge of where the proceeds used to buy the property came from. A mere belief, which is the argument in the Complaint, is not actual knowledge, at best, it is constructive knowledge. <u>Id</u>. Moreover, Petitioner had and has never met the buyer, Carmelo Cervantes Saenz, and did not know of him prior to the sale. The lack of an existing link between buyer and seller, and the absence of any concrete evidence giving rise to the allegation that Petitioner is involved in narcotics or that Defendant Cash was derived from such alleged activities is one more reason why Defendant Cash should not be forfeited and returned to Petitioner.

In this case, Petitioner was a bona fide purchaser of the property and sold the property with a bona fide interest in Defendant Cash as compensation for the sale of the property. Additionally, at the time Petitioner acquired the interest in Defendant Cash, Petitioner did not know and was reasonably without cause to believe that the property was subject to forfeiture. *See* 18 U.S.C. §

983(d)(3).  Federal agents informed Petitioner during the August 30, 2019 raid that they were looking for drugs.  Petitioner has never been found with or around drugs, and thus to suggest that Petitioner is involved in that type of enterprise without providing a warrant to highlight the basis of the suspicion is unconstitutional.

## V.     Conclusion

Petitioner argues that Defendant Cash is not subject to forfeiture under 21 U.S.C. §881(a)(6) as property traceable to proceeds of drug trafficking because no factual or reliable evidence has been provided to support the allegation. Petitioner provides three reasons for why Defendant Cash should not be forfeited and thus returned to Petitioner.

The first reason is that Petitioner argues that the search leading to the seizure of Defendant Cash was an unreasonable search and seizure, which violates the fourth amendment to the U.S. Constitution.  Katz v. United States, 389 U.S. 347 (1967). Petitioner was informed that his home was being raided because they were looking for drugs. No drugs were found. However, if it is asserted that the raid was for the purpose of forfeiture proceedings, a warrant is still required.  (*See* Rule 41 of the Federal Rules of Criminal Procedure which requires a judicial officer to make an ex-parte determination of probable cause before a seizure warrant will issue).  The government is still required to show probable cause to believe that the property is subject to forfeiture. (*See* United States v. Plat 20, Lot 17, 960 F.2d 200, 204 (1st Cir. 1992) (stating government has burden of showing probable cause); United States v. 890 Noyac Rd., 945 F.2d 1252, 1255 (2d Cir. 1991) (same); United States v. Lot 9, Block 2 of Donnybrook Place, 919 F.2d 994, 997-98 (5th Cir. 1990) (same); United States v. 6109 Grubb Rd., 886 F.2d 618, 621 (3d Cir. 1989) (same)).  Petitioner argues that the exclusionary rule also applies in this case.

13

The second reason why Petitioner argues that Defendant Cash, in the amount of $210,100.00, should not be forfeited because Petitioner is an innocent owner to Defendant Cash as the proceeds from a bona fide sale as protected under 18 U.S.C. § 983(d)(3)(A)(i). Additionally, Petitioner argues that Defendant Cash, in the amount of $48,735.00, should not be forfeited because Defendant Cash was derived from Petitioner's Diesel Construction business. Documents in support of the proceeds were previously provided in Petitioners claim and petition for remission/mitigation through the Department of Justice (DOJ) website on or about November 26, 2019.

The third reason why Petitioner argues against the forfeiture of Defendant Cash is because the verified statement by Special Agent Donahue included in the forfeiture complaint is based on speculation and unwarranted allegations. Petitioner outlined the seven factors used by Special Agent Donahue and rebutted the assertions raised in the complaint.

## VI.    Prayer

Petitioner prays that Defendant Cash not be forfeited and that Defendant cash be returned to Petitioner for the reasons stated within this verified response. The reasons stated are a fourth amendment violation, the innocent owner provision in 18 U.S.C. § 983(d)(3)(A)(i) for Defendant Cash in the amount of $210,100.00, and that the verified statement provided in the forfeiture complaint is based on speculation and unwarranted allegations.

Respectfully Submitted

Ismael Rivera, Esq.
FBN: 2895517
SBN: 24091980
EOIR: XX896911
Law Office of Ismael Rivera
213 W Interstate 2 Ste. E
Pharr, TX 78577
Office: 956-685-1055
Fax: 210-951-5603

I _Jose Garcia_, attest that the information contained within this Claim is true and correct to the best of my knowledge. My attorney prepared this Claim with information provided to him by me, the Petitioner.

Jose Luis Garcia
Petitioner filing Claim for Defendant Cash

15

## CERTIFICATE OF CONFERENCE

Pursuant to S.D. Tex. Cr. LR 12.2, and Rule G(5) of the Supplemental Rules for Admirality or maritime Claims and Asset Forfeiture Actions, counsel for Jose Luis Garcia, Ismael Rivera, has conferred with Assistant United States Attorney Jon Muschenheim about the filing of Petitioner's Claim for Interest in Defendant Cash.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via e-mail on this 1st day of April, 2020 to the following, in compliance with the instructions contained in the Complaint:

| | |
|---|---|
| Mr. Jon Muschenheim<br>Assistant United States Attorney<br>United States Attorney's Office<br>800 N. Shoreline Dr. Suite 500<br>One Shoreline Plaza<br>Corpus Christi, TX 78401<br>Ph: (361) 881-3111<br>Email: jon.muschenheim@usdoj.gov<br>**Attorney for Plaintiff** | _____  Regular Mail<br>_____  Certified Mail, RRR<br>_____  Hand Delivery<br>_____  Facsimile<br>\_\_\_\_X\_\_\_\_  Electronic Mail |

ISMAEL RIVERA, Esq.
Attorney for Petitioner
Jose Luis Garcia